# EXHIBIT "B"

1  LYNN M. DEAN (Cal. Bar No. 205562)
   Email: deanl@sec.gov
2  MATTHEW T. MONTGOMERY (Cal. Bar No. 260149)
   Email: montgomerym@sec.gov
3
4  Attorneys for Plaintiff
   Securities and Exchange Commission
5  Michele Wein Layne, Regional Director
   Alka N. Patel, Associate Regional Director
6  Amy J. Longo, Regional Trial Counsel
   444 S. Flower Street, Suite 900
7  Los Angeles, California 90071
   Telephone: (323) 965-3998
8  Facsimile: (213) 443-1904

9
10              **UNITED STATES DISTRICT COURT**
11                  **DISTRICT OF NEVADA**
12
13 SECURITIES AND EXCHANGE          Case No. 2:19-cv-01515-APG-VCF
   COMMISSION,
14                                  **DECLARATION OF DEBORAH
              Plaintiff,            RUSSELL IN SUPPORT OF
15                                  PLAINTIFF SECURITIES AND
         vs.                        EXCHANGE COMMISSION'S
16                                  MEMORANDUM OF POINTS AND
   JOHN F. THOMAS [aka JOHN         AUTHORITIES IN SUPPORT OF ITS
17 RODGERS, JONATHAN WEST,          MOTION FOR A PRELIMINARY
   JOHN FRANK, and JOHN             INJUNCTION**
18 MARSHALL], THOMAS BECKER,
   DOUGLAS MARTIN, PAUL
19 HANSON, DAMIAN OSTERTAG,
   EINSTEIN SPORTS ADVISORY,
20 LLC, QSA, LLC,
   VEGAS BASKETBALL CLUB, LLC,
21 VEGAS FOOTBALL CLUB, LLC,
   WELLINGTON SPORTS CLUB,
22 LLC, WELSCORP, INC., and
   EXECUTIVE FINANCIAL
23 SERVICES, INC.
24            Defendants.
25
26
27
28

**EXHIBIT "B"**

I, Deborah Russell, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I have personal knowledge of each of the matters set forth below, and if called upon as a witness I could and would competently testify as to the facts stated herein.

2. I am a staff accountant in the Division of Enforcement of the Securities and Exchange Commission ("Commission" or "SEC") at its Washington, D.C. headquarters. I have been a licensed Certified Public Accountant, licensed in the State of California, since May 17, 1991, and have worked on investigations at the SEC's Division of Enforcement since April 20, 2003. As part of my job, I provide accounting analysis and services for the SEC in civil enforcement actions, including bank-records analyses.

3. In the course of my duties with the SEC, I analyze bank records, financial records, and other books and records of companies, I make calculations and observations based upon those records, and conduct related inquiries and investigations. The documents that I analyze in the course of my duties with the SEC are of the type reasonably relied upon by accountants in forming opinions and inferences about, among other things, the finances of a company and its sources and uses of money.

4. During the course of the SEC's investigation entitled *In the Matter of Wellington Sports Club LLC* and pursuant to my duties as an accountant with the SEC, I reviewed bank records (including underlying detail such as account statements, account opening documents, signature cards, wire transfers, deposit slips and copies of items deposited, checks, withdrawal slips and bank account transfers) for the following accounts that were produced to the SEC:

    a. Aloha Pacific Federal Credit Union Account No. XXXXXX0001 in the name of John F. Thomas III (hereinafter "Aloha Thomas account 0001") for the period February 7, 2018 through May 22, 2019.

    b. Aloha Pacific Federal Credit Union Account No. XXXXXX0030 in the

EXHIBIT "B"    1

name of John F. Thomas III (hereinafter "Aloha Thomas account") for the period February 7, 2018 through May 22, 2019.

    c. American First National Bank Account No. XXXXXX1504 in the name of Vegas Basketball Club LLC (hereinafter "American First Vegas Basketball account") for the period February 11, 2016 through March 31, 2018;

    d. Bank of America Account No. XXXXXXXX9049 in the name of No-More-Bad-Hires, Inc. (hereinafter "Bank of America No-More-Bad-Hires account") for the period August 1, 2014 through June 30, 2015;

    e. Bank of America Account No. XXXXXXXX0188 in the name of Sports Biometrics LLC (hereinafter "Bank of America Sports Biometrics account") for the period August 1, 2014 through May 31, 2015;

    f. Bank of America Account No. XXXXXXXX8192 in the name of Vegas Basketball Club LLC (hereinafter "Bank of America Vegas Basketball account 8192") for the period January 26, 2015 through November 30, 2015;

    g. Bank of America Account No. XXXXXXXX8189 in the name of Vegas Basketball Club LLC (hereinafter "Bank of America Vegas Basketball account 8189") for the period January 26, 2015 through November 30, 2015;

    h. Bank of America Account No. XXXXXXXX3801 in the name of Vegas Football Club LLC (hereinafter "Bank of America Vegas Football account 3801") for the period August 4, 2014 through November 12, 2015;

    i. Bank of America Account No. XXXXXXXX7210 in the name of Vegas Football LLC ( hereinafter "Bank of America Vegas Football account 7210") for the period October 2, 2014 through November 28, 2017.

    j. Bank of America Account No. XXXXXXXX6257 in the name of

|   |   |
|---|---|
| 1 | Welscorp, Inc. (hereinafter "Bank of America Welscorp account") for |
| 2 | the period September 30, 2016 through June 30, 2019; |
| 3 | k. Bank of Nevada Account No. XXXXXX3753 in the name of ESA LTD |
| 4 | (hereinafter "Bank of Nevada ESA account") for the period January 23, |
| 5 | 2017 through August 18, 2017; |
| 6 | l. Bank of the West Account No. XXXXX4937 in the name of QSA LLC |
| 7 | (hereinafter "Bank of West QSA account") for the period January 10, |
| 8 | 2019 through July 10, 2019; |
| 9 | m. Bank of the West Account No. XXXXX5082 in the name of Thomas |
| 10 | Joseph Becker (hereinafter "Bank of the West Thomas Becker account) |
| 11 | for the period January 10, 2019 through July 10, 2019; |
| 12 | n. Bank of the West Account No. XXXXX9228 in the name of Wellington |
| 13 | Sports Club LLC (hereinafter "Bank of West Wellington account") for |
| 14 | the period December 29, 2015 through January 31, 2017; |
| 15 | o. Citibank, N.A. Account No. XXXXXXX7862 in the name of Thomas J. |
| 16 | Becker (hereinafter "Citibank Thomas Becker account") for the period |
| 17 | February 3, 2017 through March 4, 2018; |
| 18 | p. Citibank, N.A. Account No. XXXXX0183 in the name of Boston |
| 19 | Biometrics LLC (hereinafter "Citibank Boston Biometrics account") for |
| 20 | the period March 1, 2015 through February 28, 2018; |
| 21 | q. Citibank, N.A. Account No. XXXXX6907 in the name of No-More- |
| 22 | Bad-Hires, Inc. (hereinafter "Citibank No-More-Bad-Hires account") for |
| 23 | the period March 1, 2015 through February 28, 2018; |
| 24 | r. Citibank, N.A. Account No. XXXXX3671in the name of QSA LLC |
| 25 | (hereinafter "Citibank QSA account") for the period February 3, 2017 |
| 26 | through November 5, 2018; |
| 27 | s. Citibank, N.A. Account No. XXXXX0894 in the name of Sports |
| 28 | Psychometrics LLC (hereinafter "Citibank Sports Psychometrics |

EXHIBIT "B"      3

account") for the period March 1, 2015 through February 28, 2018;

t. Citizens Bank Account No. XXXXX8294 in the name of Thomas J. Becker (hereinafter "Citizens Becker account") for the period August 1, 2014 through July 17, 2019.

u. JPMorgan Chase Bank, N.A. Account No. XXXXXXXXXX9386 in the name of ESA LTD (hereinafter "Chase ESA account") for the period December 26, 2017 through February 28, 2019;

v. Meadows Bank Account No. Account XXXXXX4424 in the name of ESA LTD c/o Thomas Becker (hereinafter "Meadows Bank ESA account") for the period October 25, 2016 through February 28, 2017.

w. Nevada State Bank Account No. XXXXX4947 in the name of ESA LTD ("hereinafter "Nevada State ESA account") for the period February 25, 2019 through July 31, 2019;

x. Nevada State Bank Account No. XXXXX7518 in the name of John F Thomas III and Einstein Sports Advisory LTD (hereinafter "Nevada State Einstein account") for the period December 18, 2015 through November 30, 2016;

y. US Bank Account No. XXXXXXXX0008 in the name of Thomas J Becker DBA ESA LTD (hereinafter "US Bank ESA account") for the period August 17, 2017 through January 31, 2018;

z. US Bank Account No. XXXXXXXX0504 in the name of Thomas J Becker (hereinafter "US Bank Thomas Becker account") for the period August 31, 2015 through January 23, 2018;

aa. US Bank Account No. XXXXXXXX8128 in the name of Thomas J Becker DBA QSA LLC (hereinafter "US Bank QSA account") for the period July 12, 2016 through January 31, 2018;

bb. Wells Fargo Account No. XXXXXX6502 in the name of Welscorp, Inc. (hereinafter "Wells Fargo Welscorp account 6502") for the period April

EXHIBIT "B"  4

|     |                                                                                       |
|-----|---------------------------------------------------------------------------------------|
| 1   | 17, 2017 through January 31, 2019;                                                    |
| 2   | cc. Wells Fargo Account No. XXXXXX2620 in the name of Thomas J.                       |
| 3   | Becker (hereinafter "Wells Fargo Thomas Becker account") for the                      |
| 4   | period January 3, 2017 through January 31, 2019;                                      |
| 5   | dd. Wells Fargo Account No. XXXXXX6666 in the name of Welscorp, Inc.                  |
| 6   | (hereinafter "Wells Fargo Welscorp account 6666") for the period                      |
| 7   | January 3, 2017 through April 30, 2017;                                               |
| 8   | ee. Wells Fargo Account No. XXXXXX2628 in the name of Vegas Football                  |
| 9   | Club LLC (hereinafter "Wells Fargo Vegas Football account") for the                   |
| 10  | period August 4, 2014 through October 31, 2014; and                                   |
| 11  | ff. Wells Fargo Account No. XXXXX6482 in the name of QSA LLC                          |
| 12  | (hereinafter "Wells Fargo QSA account") for the period October 17,                    |
| 13  | 2018 through January 31, 2019                                                         |
| 14  | gg. Wells Fargo Account No. XXXXXX7399 in the name of John F.                         |
| 15  | Thomas (hereinafter "Wells Fargo John Thomas account") for the period                 |
| 16  | August 1, 2014 through October 28, 2014 (collectively, the "Bank                      |
| 17  | Records" and "Bank Accounts of the Entities").                                        |

18  5. A true and correct copy of the declarations of the custodian of records
19  for Aloha Pacific Federal Credit Union which was produced to the SEC is attached as
20  Exhibit 1.
21  6. A true and correct copy of the declaration of the custodian of records for
22  American First National Bank which was produced to the SEC is attached as Exhibit
23  2.
24  7. A true and correct copy of the declarations of the custodian of records
25  for Bank of America which were produced to the SEC are attached as Exhibit 3.
26  8. A true and correct copy of the declaration of the custodian of records for
27  Bank of Nevada which were produced to the SEC are attached as Exhibit 4.
28  9. A true and correct copy of the declarations of the custodian of records

EXHIBIT "B"  5

1. for Bank of the West which were produced to the SEC are attached as Exhibit 5.

10. A true and correct copy of the declarations of the custodian of records for Citibank, N.A. which were produced to the SEC are attached as Exhibit 6.

11. A true and correct copy of the declarations of the custodian of records for JPMorgan Chase Bank, N.A. which were produced to the SEC are attached as Exhibit 7.

12. A true and correct copy of the declarations of the custodian of records for Citizens Bank, which were produced to the SEC are attached as Exhibit 8.

13. A true and correct copy of the declaration of the custodian of records for Meadows Bank which were produced to the SEC are attached as Exhibit 9.

14. A true and correct copy of the declarations of the custodian of records for Nevada State Bank which were produced to the SEC are attached as Exhibit 10.

15. A true and correct copy of the declaration of the custodian of records for US Bank which were produced to the SEC are attached as Exhibit 11.

16. A true and correct copy of the declarations of the custodian of records for Wells Fargo which were produced to the SEC are attached as Exhibit 12.

17. Based on my review of the account opening documents, I have determined that John F. Thomas, a/k/a John F. Thomas III or John Frank Thomas, is the sole authorized signatory on the following accounts:

    a. Aloha Thomas account 0001;

    b. Aloha Thomas account 0030;

    c. American First Vegas Basketball account;

    d. Bank of West Wellington account;

    e. Bank of America No-More-Bad-Hires account

    f. Bank of America Sports Biometrics account;

    g. Bank of America Vegas Football account 3801

    h. Bank of America Vegas Football account 7210

    i. Citibank Boston Biometrics account;

  j. Citibank No-More-Bad-Hires account;

  k. Citibank Sports Psychometrics account;

  l. Wells Fargo John Thomas account;

  m. Wells Fargo Vegas Football account;

  n. Bank of America Vegas Basketball account 8192; and

  o. Bank of America Vegas Basketball account 8189.

18. True and correct copies of the signature cards which were produced to the SEC for the foregoing accounts are attached as <u>Exhibits 13 through 24.</u>

19. Based on my review of the account opening documents for the Nevada State Einstein account, I have determined that John F Thomas III and Einstein Sports Advisory LTD are the sole authorized signatories on the account. A true and correct copy of the signature card which was produced to the SEC is attached as <u>Exhibit 25.</u>

20. Based on my review of the account opening documents for the Nevada State ESA account, I have determined that Thomas J Becker and ESA LTD are the sole authorized signatories on the account. A true and correct copy of the signature card which was produced to the SEC is attached as <u>Exhibit 26.</u>

21. Based on my review of the account opening documents, I have determined that Thomas J. Becker, a/k/a Thomas Joseph Becker, is the sole authorized signatory on the following accounts.

  a. Bank of America Welscorp account;

  b. Bank of Nevada ESA account

  c. Bank of the West Thomas Becker account

  d. Bank of the West QSA account

  e. Citibank Thomas Becker account;

  f. Citibank QSA account;

  g. US Bank ESA account;

  h. US Bank QSA account;

  i. US Bank Thomas Becker account

  j. Wells Fargo Welscorp account 6502;

  k. Wells Fargo QSA account;

  l. Wells Fargo Thomas Becker account;

  m. Wells Fargo Welscorp account 6666.

  n. Chase ESA account;

  o. Citizens Becker account; and

  p. Meadows Bank ESA account.

22. True and correct copies of the signature cards which were produced to the SEC for the foregoing accounts are attached as <u>Exhibits 27 through 39.</u>

23. I also reviewed the QuickBooks produced by Wellington Sports Club, LLC for the period August 2014 to March 31, 2018 for the following entities:

  a. Boston Biometrics LLC;

  b. ESA LTD;

  c. QSA LLC;

  d. Sports Psychometrics LLC;

  e. Vegas Basketball Club LLC;

  f. Vegas Football Club LLC;

  g. Wellington Sports Club LLC; and

  h. Welscorp, Inc.

24. The Defendants used the Quickbooks accounting software to maintain a log of checks that they wrote. I was able to access Defendants' Quickbooks records through March 2018 to determine the purposes of checks written to investors and others. For the period after March 2018, I relied on the Bank Records and other evidence the SEC obtained during its investigation and used my professional judgment to determine the purpose of certain payments to investors.

25. In performing my analysis, I cross-referenced the Bank Records with other evidence the SEC obtained during its investigation. Where necessary, I relied on information provided to me by my colleagues based on their review of investment

contracts and other communications with investors to identify investors, investment amounts, and payment terms. These contracts and other communications are collectively referred to as the "Other Documents." In certain instances, when necessary due to the lack of other evidence, I relied on my professional judgment in identifying receipts from and the purposes of payments to investors. Where appropriate, I identify these instances.

26. Based on my review of the Bank Records and review of the QuickBooks for dates through March 2018, and consultation with my colleagues regarding information contained in the Other Documents, I determined that payments by investors were structured so that such payments served as numerical customer identifiers (the "Numerical Identifiers"). For example, in an April 20, 2017 email from John Thomas (using his alias, Jonathan West) to Donald Berger, a true and correct copy of which is attached here to as <u>Exhibit 40</u>, Thomas directs an investor to add $20.66 to any deposit to identify the investor. I relied on the Numerical Identifiers to identify receipts from certain investors.

27. I prepared an analysis which summarizes the sources and uses of funds. This analysis is presented in a spreadsheet, which is attached as <u>Exhibit 41</u>.

28. Based on my review of the Bank Records, I determined that from August 2014 to July 2019, $31,149,627.79 was deposited to the Bank Accounts of the Entities, (excluding inter-bank transfers among the Bank Accounts of the Entities). Of this amount, $29,543,663.96 (95%) was received from investors, $719,986.53 (2%) was cash deposits from unidentified sources; $408,540.33 (1%) was received from related individuals; and $477,436.97 (2%) was from miscellaneous other sources. Only $1,605,963.88 was received from sources other than identified investors. I focused my analysis of the Bank Records on the receipts from investors to determine how these amounts were expended.

29. Based on my review of the Bank Records I determined that there were numerous inter-bank transactions that transferred funds between the various entities

EXHIBIT "B" 9

1  with no apparent business purpose.  As a result, the funds were commingled.

2  30. Of the $31,149,627.79 in total receipts, $2,610,158.76 was received in 2019, $9,800,173.58 in 2018, $14,939,641.51 in 2017, $1,688,384.56 in 2016, $1,579,570.58 in 2015, and $531,698.80 in 2014.

31. Of the $29,544,000 in receipts from investors, $2,415,483.11 (8%) was received in 2019, $9,320,235.63 (32%) was received in 2018; $14,711,521.20 (50%) in 2017; $1,457,007.40 (5%) in 2016, $1,299,654.85 (4%) in 2015 and $339,761.77 (1%) in 2014.

32. Based on my review of the Bank Records and the QuickBooks, I determined that were at least 600 investors.  In certain instances, investments were made by entities, trusts, or funds.  I treated such investors as a single investor and, consequently, the number of individual investors could be higher should each member of an entity, trust, or fund be counted as a single investor.  Also, in cases where there were more than one party to a single investment transaction, as in the case of spouses, each party was counted as a separate investor.

33. I determined that, excluding inter-bank transfers among Bank Accounts of the Entities, from August 2014 through July 31, 2019, $31,617,866.81 was disbursed from the Bank Accounts of the Entities.  Of this amount, $13,222,296.55 (42%) was paid to investors; $5,861,475.44 (18%) for commissions; $8,053,285.75 (26%) for various other business and personal expenses; $2,127,819.99 (7%) was withdrawn for undesignated purposes; and $2,353,027.08 (7%) was paid to related individuals.

34. I determined whether a payment should be classified as a distribution to an investor or as commission payment based on descriptions in the Bank Records or the QuickBooks, or in certain cases, information in the Other Documents. For certain payments subsequent to March 2018, I evaluated historical payment patterns to identify commission payments.

35. Based on my review of the Bank Records and the QuickBooks, I

EXHIBIT "B"  10

concluded that, at most, $4,480,847.07 could have been used for engaging in betting activities on behalf of investors. I conservatively estimated this amount based on the assumption that the $2,127,819.99 withdrawn for undesignated purposes and the $2,353,027.08 paid to related individuals were used entirely for betting activities.

36. Of the $13,222,296.55 paid to investors, $562,670.87 (4%) was paid in 2019, $4,268,680.08 (32%) in 2018; $7,640,459.27 (58%) in 2017; $387,831.39 (3%) in 2016; $354,903.94 (3%) in 2015, and $7,751.00 (1%) in 2014.

37. Based on my review of the Bank Records and the QuickBooks, I determined that certain amounts were paid to individuals or entities in their roles of brokers and agents. The Bank Records and QuickBooks indicate that commissions were paid to at least 150 individuals and entities. Specifically I determined that from 2016 to 2019, Paul Hanson was paid $281,000 in commissions, Damian Ostertag was paid $414,000 and Douglas Martin and his related entity Executive Financial Services were paid $458,000.

38. Because business and personal accounts were commingled, in certain instances, it was not readily determinable whether expenditures were for business or personal purposes. The $8,053,285.75 in payments for business related and personal expenses included disbursements for the following:

    a. Payroll-related costs of $1,630,919.73;

    b. Retail purchases, wellness products, and utilities $863,321.92

    c. Rent costs of $747,605.76;

    d. Legal and consulting fees of $851,790.04;

    e. Auto $86,526.19

    f. Food, entertainment, and travel $256,209.36;

    g. Home improvements and maintenance costs of $590,645.61

    h. Credit card and loan repayments of $253,317.56;

    i. Aggregate payments of $2,159,312.01 to various individuals and unfamiliar entities for unknown purposes.

EXHIBIT "B"   11

  j. Other costs of $613,637.57.

39. Based on these facts, I made the following conclusions:

  a. The Entities made at least $11,616,332.72 ($13,222,296.55 total payments to investors minus $1,605,963.83) in Ponzi-type payments, i.e., the Entities used at least $11,616,332.72 of investor funds to pay returns to other investors.

  b. The Entities used at least $12,308,779.36 from investors to pay commissions, business, and personal expenses. Examples of these payments in three accounts are detailed in paragraphs 40 to 42, below.

40. Investor funds deposited to the Citibank QSA account were used to make payments as follows:

  a. On February 3, 2017, the Citibank QSA account had an opening balance of zero.

  b. During February 2017, $1,000 in deposits from unspecified sources was made to the Citibank QSA account.

  c. During December 2017, $1,000,074 received from investors was deposited to the Citibank QSA account.

  d. Consequently, from February 2017 to December 2017, a total of $1,001,074 was deposited to the Citibank QSA account, consisting of $1,000 from unspecified sources and $1,000,074 from investors.

  e. From February 2017 to December 2017, the only disbursements from the Citibank QSA account were for $280 in bank charges and fees.

  f. From January 1, 2018 to February 28, 2018 the only additional deposits to the Citibank QSA account were $348,943 in deposits received from investors and $10,979 in monies transferred from US Bank QSA account, for total deposits of $359,922.

  g. From January 1, 2018 to February 28, 2018, $742,784 was disbursed

EXHIBIT "B"   12

from the Citibank QSA account, of which $616,020 was paid to investors and $126,764 was used for various business and personal expenses.

 h. Consequently, from February 2017 to February 2018, total deposits to the Citibank QSA account were $1,360,996, consisting of $1,000 in unspecified deposits, $10,979 in amounts transferred from the US Bank QSA account, and $1,349,017 in amounts received from investors. From February 2017 to February 2018, total disbursements from the Citibank QSA account were $743,064 consisting of $616,020 in payments to investors and $127,044 in payments for business and personal expenses.

 i. Based on these observations, I determined that, at least, $604,041 of investor funds were used to make Ponzi-type payments to investors, and at least, $115,065 of investor funds was used for payment of business and personal expenses.

41. Investor funds deposited to the Bank of the West Wellington account were used to make payments as follows:

 a. On July 1, 2016, the opening balance in the Bank of West Wellington account was $689.

 b. During July 2016, the only deposit to the Bank of West Wellington account consisted of $25,000 of investor funds.

 c. During July 2016, $2,065 was disbursed for business expenses, and $2,000 of cash was withdrawn from the Bank of West Wellington account.

 d. During August 2016, total deposits to the Bank of West Wellington account consisted of $9,990 of investor funds.

 e. During August 2016, total disbursements from the Bank of West Wellington account were $29,429, consisting of $14,379 in business and personal expenses, $7,000 in payments to a related individual, and

EXHIBIT "B" 13

1  $8,050 of cash withdrawals.

2  f. Consequently, from July 2016 to August 2016, $35,679 of funds became available in the Bank of West Wellington account, consisting of the $689 opening balance, and $34,990 of investor funds. During this period, $33,494 was disbursed, consisting of $16,444 for business and personal expenses, $7,000 paid to a related individual, and $10,050 of cash withdrawals.

  g. Based on these observations, I determined that, at least, $15,755 of investor funds were used to pay business and personal expenses and, at least $6,311 of investor funds were used to make payments to individuals related to the Entities.

42. Investor funds deposited to the Chase ESA account were used to make payments as follows:

  a. On December 26, 2017, the opening balance of the Chase ESA account was $0. From December 26, 2017 to January 31, 2018, total deposits of $519,589 were made to the Chase ESA account, consisting of $518,589 of investor funds, and $1,000 in deposits from unspecified sources.

  b. From December 26, 2017 to January 31, 2018, there were $232,346 in disbursements from the Chase ESA account, consisting of $199,414 in payments to investors, $29,318 in business expenses, and $3,614 paid to related individuals.

  c. Based on these observations, I determined that, at least, $198,414 of investor funds were used to make Ponzi-type payments to investors, $28,318 of investor funds were used to pay business expenses, and $2,614 were used to pay individuals related to the Entities.

43. In June 2018, Defendants had nine open bank accounts. I totaled the highest daily account balance for each of these nine bank accounts and determined that, in aggregate, the highest daily account balance was $1,788,161. A true and

EXHIBIT "B"   14

correct copy of an excel spreadsheet I prepared showing the June 2018 balances is attached hereto as Exhibit 42.

44. Based on my review of the Bank Records, Defendants received new investor money as recently as July 2019, the last month for which the SEC has records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of September, 2019 in Washington, D.C.

_____
Deborah Russell

EXHIBIT "B" 15